**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| DAVID A. SZWAK | CIVIL ACTION NO. 07-2092 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| DALE C. EARWOOD, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are cross appeals filed pursuant to 28 U.S.C. § 158(a) by David A. Szwak ("Szwak") and Dale C. Earwood ("Earwood") from the final orders of the United States Bankruptcy Court for the Western District of Louisiana. See Record Documents 1 & 4. Szwak appeals from the bankruptcy court's September 5, 2007 order on the trustee's Motion for Compromise, and from the bankruptcy court's October 17, 2007 order on the Motion for Reconsideration and to Alter or Amend. See Record Document 1. Earwood appeals from these same orders, but "only insofar as the decision of the [bankruptcy] court reflects a unilateral reduction of the hourly rate of the superceded custodian set by order of the First Judicial District Court of Caddo Parish, Louisiana and agreed to by the parties of the debtor and the superceded custodian." Record Document 4.

Based on the following, the bankruptcy court's orders of September 5, 2007 and October 17, 2007 are **AFFIRMED**.

**I.  BACKGROUND.**

At all times relevant to this matter, Szwak and Mary Winchell ("Winchell") were the remaining partners in Bodenheimer, Jones, Szwak, and Winchell, a Shreveport law firm. On January 12, 2006, Winchell filed a petition for judicial dissolution and liquidation of partnership, styled In re Dissolution and Liquidation of Bodenheimer, Jones, Szwak, and

Winchell, L.L.P., No. 499,957-B, First Judicial District Court, Caddo Parish, Louisiana ("state liquidation proceeding"). In the state liquidation proceeding, both Winchell and Szwak asserted interests as general partners of the debtor. See Record Document 3, Answer to Involuntary Petition at ¶ 2. At a January 17, 2006 hearing, Judge Jeanette Garrett ("Judge Garrett") appointed Earwood to serve as liquidator of the debtor. See Record Document 5, Transcript of State Liquidation Proceeding Hearing at 4. Both Winchell and Szwak consented to the appointment of Earwood as liquidator. See id. at 2. During the hearing, Judge Garrett also discussed Earwood's compensation as liquidator and ultimately set his compensation at $225 per hour:

> The Court: Although I know that the Lawyers are going to discuss this with Ms. Winchell and Mr. Szwak, we discussed the fee arrangement with Mr. Earwood. He ordinarily charges three hundred dollars per hour. Under the circumstances, he agreed I believe he said to two hundred, twenty five dollars an hour.
>
> Mr. Madison: I think he said two hundred to two-fifty, depending on the intensity of the work. . . .
>
> The Court: Right. Okay. Two hundred to two fifty. So I was thinking in my mind, okay, will average two twenty five.
>
> He will be paid. He will be paid out of either existing partnership assets. If those are not sufficient to pay him, then the two partners would be expected to.
>
> . . .
>
> I think, after having visited with him on the phone, all the Lawyers are satisfied that he will do a good job.

Id. at 4-5.

On April 13, 2006, after the liquidation was under way, Szwak filed an involuntary petition under Chapter 7 of the United States Bankruptcy Code. See Record Document 3,

Chapter 7 Involuntary Petition. Winchell and Earwood opposed the involuntary bankruptcy filing. Earwood retained bankruptcy counsel, Davidson, Jones & Summers, APLC, for the purpose of appearing on his behalf in the bankruptcy proceedings. After a contested hearing, an Order for Relief was entered on June 7, 2006. See id., Order for Relief.

On July 19, 2006, Earwood filed "Liquidator's Application for Compensation and Reimbursement of Legal Expenses as Custodian" seeking compensation in the amount of $47,189.78; reimbursement of actual and necessary out-of-pocket expenses in the total amount of $549.78; and reimbursement of actual and necessary out-of-pocket legal expenses in the total amount of $23,227.85. See Record Document 3, Application for Custodian/Administrative Compensation/Expenses. Szwak, the Chapter 7 trustee, and the United States trustee timely objected to the application. On August 31, 2006, the bankruptcy court entered an interim order directing the Chapter 7 trustee to pay Earwood the sum of $28,000, without prejudice to the rights of any party to seek further compensation or to contest same.

In July 2007, the Chapter 7 trustee, John Clifton Conine, filed a Motion to Compromise. The motion acknowledged that Earwood filed an application for payment of the sums of $47,189.78 for the liquidator's fees, $549.78 for expenses, and $23,227.85 for his counsel's fees and that the bankruptcy court had previously ordered payment of $28,000, which the trustee paid. The motion further provided:

> The Trustee and the applicant [Earwood] desire to compromise the remainder of the claim, by having the Trustee pay Dale Earwood and Randy Davidson the sum of $21,500.00, in full satisfaction of any claim of Dale Earwood, Randy Davidson or the firm of Davidson, Jones & Summers may have against the estate or the Trustee, reserving to the claimants, any rights they may have against the former partners, for the collection of any remaining sums.

> The Trustee believes the compromise to be in the best interest of the bankruptcy estate, as it will end sooner any protracted litigation over the fees, which would further deplete the estate, and would compromise any "substantial contribution claim" that may be made by the claimants against the estate.

Record Document 3, Motion to Compromise. Szwak opposed the Motion to Compromise.

The Motion to Compromise came on for hearing on August 24, 2007. The bankruptcy court denied the compromise proposed by the Chapter 7 trustee and Earwood. Rather, the bankruptcy judge proposed a new compromise:

> I understand the requirements of . . . <u>Jackson Brewery</u> on motions to compromise. . . .
> That case exists for the purpose of saving a bankruptcy estate from waste caused by its own action often times or action in opposition to others. If we have a finite amount of money and we have infinite number of legal issues, it makes no sense to expend the finite amount of money on resolving or attempting to resolve infinite number of legal issues. If we engage in that, what will happen is we will exhaust through waste assets of the estate that can be utilized to pay claims, which is why we liquidate the estate.
> . . .
> I cannot deny compensation to Mr. Earwood, but if I approve the compromise, I would have to state that I believe the benefit to the estate outweighs the detriment to the estate. The estate would benefit by ending this litigation. I certainly feel it would. I was a proponent of the compromise, and I am still a proponent of compromise. But this compromise, I don't think I can approve.
> Now, I think I could approve the following compromise. I could approve a compromise that would take into consideration that Mr. Davidson's fees for opposing, on behalf of a duly appointed state court liquidator, the entry of an order of relief on an involuntary bankruptcy based on the fact that the Court should abstain and allow a state court to continue with its proceedings, . . . that is a fee that under 543 and 503 should be paid.
> . . .
> So I don't think that there is an issue with Mr. Davidson's fees. The issue is with Mr. Earwood's fees.
> Now, because I think Mr. Earwood believed he was doing what he had been tasked to do, and I believe that his belief was reinforced not once, not twice, but a number of times by the presiding state court judge, that whether I think he was wrong or not is not an issue, the issue is: Is he entitled to compensation? There is no requirement that he show that the compensation is of benefit to the estate. I agree with Mr. Davidson's arguments on that

> matter. It's only necessary that he show that the payment would be payment of reasonable compensation for services rendered and cost and expenses incurred by such custodian.
>
> . . .
>
> My suggestion of a compromise that I would approve, I took Mr. Earwood's time, and he has approximately 214 hours, and I applied $100 per hour for him. That would make his fee $21,449.90. I took Mr. Davidson's time, 23, 227.85. And for reasons I have already stated, I see no reason to reduce that fee. That would make a total of $44,677.75. We've already paid $28,000. That would leave a balance of $16,677.75.
>
> Now, he Mr. Earwood requested reimbursement of expenses in the amount of $549.78.
>
> So if my math is correct, that would make this Court propose a compromise of an additional $17,227.53. Now, that's a suggestion. If it's not accepted, this Court will not approve the compromise.

Record Document 3, Transcript of Bankruptcy Court's Findings of Fact and Reasons for Decision at 152, 155-158. When asked by Randall Davidson ("Davidson") for clarification as to how the additional $17,227.53 would break down, the bankruptcy judge responded:

> That breaks down: $23,227.85 for you.
>
> . . .
>
> Less whatever – I mean, this is a total: $23,227.85 for you, Mr. Davidson. Which I've already stated I do not believe I have the ability nor am I inclined to reduce. The only issue is Mr. Earwood.
>
> Now, I believe that Mr. Earwood is entitled to compensation, reasonable compensation. I have already stated I believe the acts he took were wrong, but I believe he believed them to be correct, and that belief was enhanced more than one time by the appointing judge.
>
> . . .
>
> I will allow an additional, on top of the 28,000, $17,227.53.
>
> . . .
>
> Randy, I put in $23,227.85 for you. I did not trim nor cut nor reduce your fee.
>
> . . .
>
> I put in $21,449.90 for Mr. Earwood. I reached that at 214 hours at 100 hours. I did not reduce his time; I just reduced the hourly rate.

Id. at 158-161. After consultation with Earwood, Davidson consented to the compromise, stating, "We'll take it." Id. at 162. Szwak did not consent to the compromise. See id. In conclusion, the bankruptcy court held:

> Okay. I understand that Mr. Szwak is still in opposition to the compromise, but I think for the reasons I've previously stated that if the applicants would agree to the compromise that the Court proposed that I would approve that. And I believe that would meet <u>Jackson Brewery</u> requirements. So I will approve the compromise as revised by the Court and accept it for an additional $17,227.53 added to the already paid 28,000. That would make a total amount to be paid in fee and expenses $45,227.53. Of that, $23,227.85 would represent Mr. Davidson's fees . . . . And the additional would be $21,449.90 fr Mr. Earwood, which is 214 hours . . . at $100 per hour . . . and expenses that Mr. Earwood requested in his application of $549.78.

<u>Id.</u> at 162-163.

An order consistent with the bankruptcy judge's oral reasons was issued on September 5, 2007. <u>See id.</u>, Order Regarding Motion to Compromise Application for Compensation by Liquidator. Szwak then filed a Motion for Reconsideration of and to Alter and Amend Order Regarding Motion to Compromise Application for Compensation by Liquidator, specifically arguing that the order was unclear regarding the credit to be applied and the amounts previously paid to the superseded custodian's attorney. <u>See id.</u>, Motion for Reconsideration. On October 17, 2007, the bankruptcy court issued an order on the Motion to Reconsider providing:

> 2. The compromise between the Debtor Estate and Mr. Earwood with respect to the balance of the Application is hereby approved subject to the following modifications:
>
> (a) The Court finds that the legal fees and expenses incurred by the Liquidator in connection with his opposition for the involuntary bankruptcy petition . . ., which are due and payable to the firm of Davidson, Jones & Summers in the amount of $23,237.85, are reasonable, were actual and necessary, and are hereby approved for payment, less prior credits received on account as follows:
>
> (I) $5,000.00 retainer received from the Liquidator from Estate funds prior to Order of Relief being entered; and

> (ii) $12,000.00 received from the Bankruptcy Estate from the interim payment of $28,000.00 . . . .
>
> These approved sums, less credits received, leaves a balance owed to Davidson, Jones & Summers by the Bankruptcy Estate of $6,237.85, which the Chapter 7 Trustee, John Clifton Conine, is authorized to pay from Bankruptcy Estate funds upon this Order becoming executory.
>
> (b) The Court will allow the Liquidator fees in the reduced amount of $21,449.90, and expenses in the amount of $549.78, for a total reduced fee and expense sum of $21,999.68, and same are hereby approved for payment, less credits received on account as follows:
>
> (I) $16,000.00 received from the Bankruptcy Estate from the interim payment of $28,000.00 . . . .
>
> These approved sums, less credits received, leaves a balance owed to Dale C. Earwood by the Bankruptcy Estate of $5,999.68, which the Chapter 7 Trustee, John Clifton Conine, is authorized to pay from Bankruptcy Estate funds upon this Order becoming executory.

Id., Order on Motion to Reconsider.

## II. LAW AND ANALYSIS.

### A. Jurisdiction and Standard of Review.

This Court has jurisdiction over the cross appeals from the bankruptcy court's orders pursuant to 28 U.S.C. § 158(a). This Court sits as an appellate court in this instance and should review the bankruptcy court's approval of a compromise settlement for abuse of discretion. See Matter of Foster Mortg. Corp., 68 F.3d 914, 917 (5th Cir. 1995), citing In re Emerald Oil Co., 807 F.2d 1234, 1239 (5th Cir.1987); In re Jackson Brewing Co., 624 F.2d 599, 602-603 (5th Cir.1980). The bankruptcy court's conclusions of law are subject to *de novo* review but its findings of fact may not be set aside by the reviewing court unless "clearly erroneous." Matter of Foster Mortg. Corp., 68 F.3d at 917, citing Sequa Corp. v.

Christopher (In re Christopher), 28 F.3d 512, 514 (5th Cir.1994). "An appellate court may reverse a fact finding of the lower court only if left with a firm and definite conviction that a mistake has been committed." Id.

    **B.**    **State Court Liquidator as Superceded Custodian.**

Title 12, Louisiana Revised Statutes, Section 142(D) provides:

> If the shareholders or incorporators do not authorize conduct of the liquidation out of court, the corporation shall file a petition with the court, praying that the corporation be liquidated and dissolved under the supervision of the court, whereupon the court shall appoint a liquidator, upon such conditions as to bond and compensation as it may deem proper. Thereafter the liquidation proceedings shall be conducted under the supervision and orders of the court.

La. R.S. 12:142(D).[1] Pursuant to this provision, Judge Garrett appointed Earwood to serve as liquidator of Bodenheimer, Jones, Szwak, and Winchell.

Under the Bankruptcy Code, the term "custodian" means:

(A)    receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

(B)    assignee under a general assignment for the benefit of the debtor's creditors; or

(C)    trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11). The historical and statutory notes of Section 101 state that paragraph eleven encompasses "a prepetition liquidator of the debtor's property." Id. Thus, Earwood

---

[1]Louisiana Civil Code Article 2834 directs that "in the absence of [a] contrary agreement, a partnership is liquidated in the same manner and according to the same rules that govern the liquidation of corporations."

was a state court liquidator who became a superceded custodian.[2]

**C.     Issues on Appeal.**

Issue Number One

Szwak argues that the bankruptcy judge committed legal error by failing to apply the "Direct Benefit Rule,"[3] which would have required Earwood and Davidson to show that their services and expenditures benefitted the estate as a prerequisite to approval of their requests for compensation and reimbursement of expenses. See Record Document 11 at 2. Like the bankruptcy court, this Court finds Szwak's argument unpersuasive.

A review of the transcript from the underlying proceeding indicates that the bankruptcy judge was conscious of this legal issue, as it was briefed and was the subject of extensive discussion and argument during the August 2007 hearing. See Record Document 5, Transcript of Direct Examination of Earwood at 26-35. He analyzed Section 543(c)(2)[4] of the Bankruptcy Code and concluded that Earwood, who was a custodian under Section 101, was entitled to reasonable compensation for services rendered and costs and expenses incurred. See id. at 31. The bankruptcy judge then moved his

---

[2]The bankruptcy court held that Earwood was a custodian under Section 101. See Record Document 5, Transcript of Direct Examination of Earwood at 31.

[3]In his reply, Szwak begins to refer to the legal standard as the "Equitable Benefit Doctrine." Record Document 18 at 1-5.

[4]Section 543(c)(2) provides:

The court, after notice and a hearing, shall –

(2)     provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian.

11 U.S.C. § 543(c)(2).

analysis from Section 543(c)(2) to Section 503(b)(3), which deals with administrative expenses:

> (b) After notice and a hearing, there shall be allowed administrative expenses . . . including –
>
> > (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –
> >
> > > (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian.

11 U.S.C. § 503(b)(3)(E). Based on these provisions, the bankruptcy judge concluded that Earwood, as a superseded custodian, was entitled to payment for reasonable fees and expenses. The bankruptcy judge also conducted a similar analysis in relation to Davidson's legal fees, concluding that such fees were "reasonable compensation for professional services rendered by an attorney . . . whose expense is allowable under subparagraph . . . (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney." 11 U.S.C. § 503(b)(4).

In determining whether to approve Earwood's and Davidson's requests for compensation and reimbursement of expenses, the transcript establishes that the bankruptcy judge specifically considered, and rejected, Earwood's benefit to the estate argument:

> The Court: If I understand correctly from the memorandums that you have submitted, because the custodian is separated under (3)(e) and the legal fees for the custodian are separated under 3 – under (b)(4), those persons, they must prove that their compensation and expenses meet 543 requirements, not benefit to the estate.

> Mr. Davidson: To actual and necessary and overarching reasonableness.
> The Court: And 543, which I read first, indicates: Reasonable compensation for services rendered and cost and expenses incurred by such custodian.
> Nowhere is there any statutory requirement that same be of benefit to the estate.
>
> . . .
>
> Now, Mr. Raley has consistently cited a United States Supreme Court case. I think it was a 1909 case. My recollection – because I was there – was in 1978, Congress enacted the Bankruptcy Code that we now utilize and we no longer utilize the Act.
>
> . . .
>
> So in 1978, Congress eliminated many jurisprudential standards with the implementation of a code.
> Now, the Code sets out how we deal with people like Mr. Earwood. There is some relevance to these past cases but since the Code no longer requires that these services actually be of benefit to the estate, as they would for counsel for the trustee, but not counsel for the custodian. They only have to be reasonable.
> And I agree with your [Davidson's] legal argument and I disagree with Mr. Raley's legal argument on that matter. I have made that ruling now twice.

Id. at 32-33.

In this appeal, Szwak points to no Fifth Circuit authority compelling application of the direct benefit rule to custodial compensation. He even concedes in his reply that "there is no circuit court authority" on this issue. Record Document 18 at 2. The plain language of Sections 543(c)(2) and 503(b)(3) and (4) reveals no incorporation of the benefit to the estate standard in those sections. However, in other sections of the Bankruptcy Code, Congress specifically provided for application of a benefit to the estate standard. See 11 §§ 330(a)(4)(A)-(B) & 503(b)(3)(B). If Congress had intended for the benefit to the estate standard to apply in Sections 543(c)(2) and 503(b)(3) and (4), it would have specifically referenced the standard in the plain language of the text, just as it did in Sections 330(a)(4)(A)-(B) and 503(b)(3)(B).

This Court reviews the bankruptcy court's conclusions of law *de novo.* See Matter

of Foster Mortg. Corp., 68 F.3d at 917. Even under this standard of review, the underlying court's analysis in relation to the application of the "Direct Benefit Rule" was detailed, well-reasoned, and supported by the plain language of Sections 543(c)(2) and 503(b)(3) and (4). Further, Szwak presented nothing in his appeal to convince this Court otherwise and even conceded that there is no Fifth Circuit jurisprudence compelling application of the "Direct Benefit Rule" to the instant matter. Accordingly, the bankruptcy court's ruling was not an abuse of discretion and its decision that the "Direct Benefit Rule" was inapplicable is affirmed.

### Issue Number Two

Next, Szwak maintains that in determining whether to approve the compromise, the bankruptcy judge committed legal error by failing to evaluate and set forth in a comprehensible fashion the probability of success in the litigation, with due consideration for the uncertainty in fact and law, the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and all other factors bearing on the wisdom of the compromise, including the extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion or consider the best interest of the creditors, with proper deference to their reasonable views. See Record Document 11 at 2. Conversely, Earwood contends that the bankruptcy court properly weighed the probability of success, the uncertainty of the facts and the law, and the duration and complexity of the fee dispute. Earwood also maintains that a compromise is not barred because of one lone creditor's "veto" and that Szwak has failed to point to any evidence indicating that the compromise was "anything but good-faith and arms-length." Record Document 14 at 12, 15.

A bankruptcy court may approve a compromise settlement of a debtor's claim pursuant to Bankruptcy Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

F.R.B.P. 9019(a). Notwithstanding, a compromise settlement should be approved only if the settlement is fair and equitable and in the best interest of the estate. See Matter of Foster Mortg. Corp., 68 F.3d 914, 917 (5th Cir. 1995), citing In re Jackson Brewing Co., 624 F.2d 599, 602 (5th Cir.1980). "The judge must compare the 'terms of the compromise with the likely rewards of litigation.'" Id. When considering a compromise settlement, the bankruptcy court must weigh:

(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law;

(2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

(3) all other factors bearing on the wisdom of the compromise.

Id. In the Fifth Circuit, all other factors bearing on the wisdom of the compromise include "the amount of creditor support for a compromise settlement, . . . as a way to show deference to the reasonable views of the creditors" and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." Id. at 918.

"[T]he approval of a proposed settlement does not depend on establishing as a matter of legal certainty that the subject claim . . . is or is not worthless or valuable." Florida Trailer & Equipment Co. v. Deal, 284 F.2d 567, 571 (5th Cir. 1960). Thus, in this case, the bankruptcy court was not required to rule on the merits of the claim for compensation;

rather, the role of the bankruptcy judge was to determine whether the compromise was in the best interests of the estate. See In re Jackson Brewing Co., 624 F.2d at 602-03.

The transcript of the August 2007 hearing establishes that the bankruptcy judge was cognizant of the Jackson Brewery factors and applied those factors to the instant matter. See Record Document 3, Transcript of Bankruptcy Court's Findings of Fact and Reasons for Decision at 152, 162; Record Document 5, Transcript of Direct Examination of Earwood at 5. The bankruptcy judge was aware of the potential duration and complexity of the fee dispute:

> I think if we are going to use a Motion to Compromise and the Jackson Brewery guidelines, I think the first thing we need to understand is that we are attempting, through the Motion to Compromise, to eliminate what may or may be or what is alleged to be a very long, time-consuming, and potentially expensive litigation as to the fee application . . . .
> The Motion to Compromise that the Trustee has filed is to attempt to reduce the amount of money that the estate would be responsible for paying through the compromise, and eliminated ongoing expenses of the estate.

Record Document 5, Transcript of Direct Examination of Earwood at 5-6. During other portions of the hearing, the judge again referenced the Jackson Brewery factors in the context of Szwak's objections to Earwood's compensation. See id. at 12, 13-14. In concluding that he was a proponent of a compromise in this case, the bankruptcy judge noted:

> [Jackson Brewery] exists for the purpose of saving a bankruptcy estate from waste caused by its own action often times or action in opposition to others. If we have a finite amount of money and we have infinite number of legal issues, it makes no sense to expend the finite amount of money on resolving or attempting to resolve infinite number of legal issues. If we engage in that, what will happen is we will exhaust through waste assets of the estate that can be utilized to pay claims, which is why we liquidate the estate.

Record Document 3, Transcript of Bankruptcy Court's Findings of Fact and Reasons for

Decision at 152. The reasoning set forth above clearly supports the bankruptcy court's ultimate decision that "the estate would benefit by ending this litigation." Id. at 155.

Szwak's contention that the bankruptcy court did not consider the best interest of the creditors, with proper deference to their reasonable views, is also misplaced. Szwak appears to argue that despite the support of Winchell, Earwood, and the trustee for the compromise, he should be able to veto the compromise due to his status as a creditor of the partnership. Yet, "no case holds that creditors have an absolute 'veto power' over approval of a settlement"; rather, the court must give proper deference to the ***reasonable*** views of creditors. In re Vazquez, 325 B.R. 30, 37 (Bankr. S.D.Fla. March 3, 2005) (emphasis added), citing Foster Mortgage Corp., 68 F.3d at 917. It was Szwak who filed the involuntary petition under Chapter 7, and, as an experienced attorney himself, he knew that the he no ability to dictate the trustee's settlement efforts. See Vazquez, 325 B.R. at 37-38. Neither Szwak, who was the only creditor to oppose the compromise, nor the record point to any basis for this Court to question the trustee's comprehensive examination of the underlying facts, which lead to his conclusion that a compromise would end sooner any protracted litigation over the fees, which would further deplete the estate, and would compromise any substantial contribution claim that may be made by the claimants against the estate. See id. at 38 ("And in those instances in which the trustee's comprehensive examination of the underlying facts leads to a conclusion that further litigation will lead only to diminishing returns, protracted investigation, or costly litigation with absolutely 'no guarantee as to the outcome,' an inquiring court is to afford the trustee 'wide latitude.'").

Finally, Szwak has come forward with no evidence to support his contention that the

compromise in this case was not the product of arms-length bargaining, but rather fraud or collusion. His allegation of purported fraud and/or collusion between Earwood and Winchell is supported only by his own unsupported characterizations. Additionally, the compromise in this matter was filed by the Chapter 7 trustee in an attempt to compromise Earwood's claim; yet, Szwak has alleged no fraud or collusion between the trustee and Earwood. Thus, the Court finds that Szwak's challenge of the compromise based on fraud or collusion is without merit.

Based on the foregoing, the Court finds that the bankruptcy court's orders of September 5, 2007 and October 17, 2007, which approved the compromise between the trustee and Earwood with certain modifications, were not an abuse of discretion and such orders are affirmed in their entirety.

**D.    Issue on Cross Appeal.**

On cross-appeal, Earwood argues that the bankruptcy court committed an abuse of discretion by unilaterally reducing the administrative award under the compromise by lowering his hourly rate from $225, the rate agreed upon and fixed by Judge Garrett in the state court liquidation proceeding, to $100. See Record Document 14 at 15. The reference to a unilateral reduction pertains to the bankruptcy court's October 17, 2007 order on the Motion for Reconsideration, not the bankruptcy court's September 5, 2007 order granting the application to approve compromise.[5] Earwood frames the issue on appeal as whether the bankruptcy court showed proper deference to the state court's appointment orders,

---

[5] According to Earwood, "[o]n the reconsideration motion, the bankruptcy judge substantially modified the prior fee order until the net payment [by] the estate was $6,237.85 to [his] counsel and $5,999.68 to . . . himself, which totaled $12,237.53. . . . Neither [he] nor his counsel consented to this $5,000.00 reduction." Record Document 19 at 4.

which established the basis for Earwood's appointment and which were not challenged by Szwak or any other party. See id. at 16. Specifically, he argues:

> At the outset, it appears that the bankruptcy court should have deferred to the hourly rate set by the state court under principles of collateral estoppel or issue preclusion. . . .
> However, even when a state court action does not have preclusive effect, the bankruptcy court should take into account "principles of comity and federalism" before deciding to ignore the state court's ruling.

Record Document 14 at 16.

Relying on the Supremacy Clause, Szwak argues that "standards for fees and compensation under the Bankruptcy Code can not be superceded by state law." Record Document 18 at 17. He also argues that Earwood is judicially estopped from taking an inconsistent position on appeal in that is he accepted, in open court, the bankruptcy court's reduction of his administrative award under the compromise by lowering his hourly rate from $225 to $100. See id. at 14-16.

The Court notes that there was much confusion during the August hearing regarding how the additional $17,227.53 payment would break down. It appears that the confusion was due to the bankruptcy judge's failure to recognize/acknowledge that Davidson had already received a $5,000 retainer out of estate funds from the liquidator prior to the order of relief being entered. Notwithstanding, there was no confusion as to the total amount of money awarded and how that money would be broken down between Davidson and Earwood. The bankruptcy judge clearly stated that the total amount to be paid in fees and expenses was $45,227.53. Record Document 3, Transcript of Bankruptcy Court's Findings of Fact and Reasons for Decision at 163. He further noted that the estate had already paid $28,000. See id. at 158. More specifically, he repeatedly informed Davidson that his total

payment would be $23,227.85 and Earwood that he "would receive a grand sum total of approximately $21,449.90." Id. at 158-161. While the order on the Motion for Reconsideration was much more detailed than the previous order and broke down the individual amounts to be paid to, and the credits to be applied against, Earwood and Davidson,[6] the total amount to be paid in fees and expenses remained at $45,227.53; the total amount to be paid to Davidson remained at $23,227.85; and the total amount to be paid to Earwood remained at $21,449.90. Thus, this Court finds that there was not a substantial modification of the prior fee order, which Earwood and Davidson did, in fact, agree to in open court.

Additionally, the Court finds that the bankruptcy judge did not abuse his discretion in reducing Earwood's hourly rate from $225 to $100 per hour. While the bankruptcy judge stated that he did not think Earwood was the right choice to serve as a liquidator for a small, professional business, he reasoned that Earwood was entitled to reasonable compensation:

> I believe that Mr. Earwood is entitled to compensation, reasonable compensation. I have already stated I believe the acts he took were wrong, but I believe he believed them to be correct, and that belief was enhanced more than one time by the appointing judge.

Id. at 158-159. Further, despite attempts to question Earwood's total time and his authorization to bill in thirty minute increments, the bankruptcy judge did not reduce Earwood's reported time of 214 hours. See id. at 157-158. Yet, he did note that a Chapter 7 trustee "would not be entitled to anywhere near" the level of compensation claimed by

---

[6]Specifically, the October 17, 2007 order accounted for the $5,000 retainer that had already been paid to Davidson and set forth the amounts Davidson and Earwood had received from the $28,000 interim payment. See Record Document 3, Order on Motion to Reconsider.

Earwood. See id. at 157. The record establishes that the bankruptcy judge considered the quality and extent of services performed by Earwood; therefore, the Court finds that the bankruptcy judge's reduction in Earwood's hourly rate was a reasonable exercise of his judgment. See 8A C.J.S. Bankruptcy § 647 ("Federal, rather than state, law applies to determine the question of a custodian's compensation. As a matter of comity, the bankruptcy court may recognize a presumption in favor of the reasonableness of a state court allowance of compensation for a custodian, but the bankruptcy court ultimately must exercise its independent judgment whenever determining compensation payable out of an estate being administered in the bankruptcy court."); see also 9A Am. Jur. 2d Bankruptcy § 1633.

Based on the foregoing, the Court finds that the arguments presented in Earwood's cross appeal are without merit and the bankruptcy court's orders of September 5, 2007 and October 17, 2007 are affirmed.

## III. CONCLUSION.

For the reasons stated above, the bankruptcy court's orders of September 5, 2007 and October 17, 2007 are **AFFIRMED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, at Shreveport, Louisiana, this the 26th day of March, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE